UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| WILLIE FREEMAN<br><br>v.<br><br>UNITED STATES OF AMERICA | )<br>)<br>)<br>)<br>)<br>) | 2:25-CV-00201-DCLC-CRW |

## MEMORANDUM OPINION AND ORDER[1]

Petitioner Willie Freeman moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Civil Docs. 1, 2]. The United States has responded in opposition [Civil Doc.8]. Freeman claims that his retained counsel rendered ineffective assistance before his guilty plea, in connection with the plea itself, and at sentencing. Because the motion, files, and records of the case establish that Freeman is entitled to no relief, the motion is **DENIED** without an evidentiary hearing.

## BACKGROUND

In June 2023, agents investigating a suspected co-conspirator installed a pole-camera to conduct surveillance of that individual's residence. The pole-camera was located on a neighboring property. On June 6, 2023, that surveillance captured Freeman arriving in his vehicle, crawling underneath it, detaching large packages from the vehicle's undercarriage, and handing the packages to an unindicted co-conspirator. That co-conspirator placed a large stack of currency in the trunk of the vehicle Freeman was driving. On June 8, 2023, agents obtained a search warrant for location data from Freeman's cellphone.

[1] Unless otherwise specified, all record citations refer to the underlying criminal case No. 2:23-CR-00086.

On June 27, 2023, a Tennessee Highway Patrol trooper observed a vehicle commit a traffic violation while traveling on Interstate 26. Freeman was the driver of the vehicle. The trooper detected the odor of marijuana upon approaching the vehicle. Freeman acknowledged possessing marijuana, and a marijuana cigarette was recovered from the vehicle. A second trooper arrived at the traffic stop, and that trooper's trained narcotics detection dog alerted on the vehicle. A subsequent search revealed six packages of methamphetamine, weighing 24.84 pounds, taped to the undercarriage. The packages were the same style and were in the same location as those observed via police surveillance on June 6, 2023. [Doc 13].

A grand jury returned a two-count indictment charging Freeman with conspiracy to distribute fifty grams or more of methamphetamine, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and possession with intent to distribute the same quantity, 21 U.S.C. § 841(a)(1), (b)(1)(A) [Doc. 8]. Freeman pleaded guilty to Count One pursuant to a written plea agreement in which he stipulated to responsibility for at least 1.5 kilograms of actual methamphetamine, and the United States agreed to dismiss Count Two [Doc. 13]. The Court accepted the plea on September 20, 2023 [Doc. 15]. Count One carried a minimum sentence of 10 years' imprisonment and a maximum of life imprisonment, a maximum $10,000,000 fine, a minimum of 5 years and up to life on supervised release, and a $100 assessment [Doc. 13].

The Court calculated an advisory guidelines range of 151 to 188 months, based on a total offense level of 33 and criminal history category II [Doc. 43]. On November 7, 2024, the Court sentenced Freeman to 102 months' imprisonment, a sentence 18 months below the statutory mandatory minimum and 49 months below the advisory guideline, upon the United States's motion under 18 U.S.C. § 3553(e) [Docs. 42, 43]. Judgment was entered November 19, 2024 [Doc. 42]. Freeman did not appeal. When a defendant does not appeal, the judgment becomes final upon

expiration of the time that he could have appealed. *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004).[2] That period is fourteen days. Fed. R. App. P. 4(b)(1)(A). Therefore, Freeman's conviction became final on December 3, 2024, and the one-year limitation period ran until December 3, 2025. 28 U.S.C. § 2255(f)(1). Thus, his motion filed on November 24, 2025, is timely.

## STANDARD OF REVIEW

Relief under § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). A petitioner must establish an error of constitutional magnitude, a sentence outside the statutory limits, or an error of fact or law so fundamental as to render the proceedings invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). One "must clear a significantly higher hurdle than would exist on direct appeal" and show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Claims of ineffective assistance are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that the deficiency prejudiced him. *Id.* at 687-88, 694. Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Failure on either prong defeats the claim. *Id.* at 697.

When a conviction rests on a guilty plea, prejudice requires a reasonable probability that, but for counsel's errors, the petitioner "would not have pleaded guilty and would have insisted on

---

[2] *Sanchez-Castellano* refers to a ten-day period, which was the time for filing a notice of appeal under the version of Rule 4(b)(1)(A) then in effect. The Rule was amended effective December 1, 2009, to provide fourteen days. The holding is unaffected.

going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). That showing must be substantiated by contemporaneous evidence; "*post hoc* assertions" about how a petitioner would have pleaded are not sufficient. *Lee v. United States*, 582 U.S. 357, 369 (2017).

## ANALYSIS

### A. Pre-plea claims

Freeman first faults counsel for allegedly failing to conduct a reasonable investigation which led to his counsel not addressing a potential motion to suppress [Doc. 2, pg. 12]. Freeman claims that his attorney should have investigated the "constitutional validity of the evidence against [him]." *Id.* He argues that his counsel failed to explain "the glaring Fourth Amendment vulnerabilities in the United States's case." *Id.*

The United States argues Freeman has waived that argument. It argues that a defendant who pleads guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." [Doc. 6, pg. 4] (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). *Tollett* does not, however, sweep as broadly as the United States suggests in its response [Civil Doc. 8]. A defendant may still attack "the voluntary and intelligent character of the guilty plea" by showing that counsel's advice fell outside the range of competence demanded of criminal attorneys. *Id.* The Court will consider Freeman's argument to the extent to goes to whether his plea was voluntary and intelligently made.

When a claim of ineffective assistance rests on counsel's failure to litigate a Fourth Amendment issue, the petitioner must prove that the underlying claim is meritorious. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Freeman has failed to show his motion has any merit at all. First, Freeman argues the confidential informant's reliability "as to Freeman" was never established [Civil Doc. 2, pg. 3]. But the informant's information concerned a third party and

prompted surveillance of premises in which Freeman has no privacy interest. Fourth Amendment rights are personal and may not be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).

Second, Freeman claims the surveillance via pole-camera observation violated his Fourth Amendment rights. It didn't. The Sixth Circuit has foreclosed that argument as it has held that warrantless pole-camera surveillance of what is visible from a public vantage point is not a search. *United States v. Houston*, 813 F.3d 282, 287-88 (6th Cir. 2016). The sole authority Freeman offers, *United States v. Moore-Bush*, 963 F.3d 29 (1st Cir. 2020), was withdrawn upon the grant of rehearing en banc and does not stand as precedent in its own circuit. *United States v. Moore-Bush*, 36 F.4th 320 (1st Cir. 2022).

Third, Freeman claims the GPS warrant was invalid because the supporting information was gleaned from a "potentially unlawful" investigation. But Freeman does not indicate what was unlawful about the investigation. As noted, pole cameras are not unlawful. Using the pole camera, law enforcement saw Freeman remove pounds of methamphetamine from underneath his car. They presented that information to a state judicial officer who found probable cause and issued the GPS tracking warrant. Freeman fails to identify any deficiency in that warrant. It was based on lawfully obtained evidence. Even if Freeman had identified a defect in the affidavit, which he has not, suppression does not follow from a warrant on which officers relied in objective good faith. *United States v. Leon*, 468 U.S. 897, 922 (1984).

Fourth, Freeman claims the traffic stop was pretextual. That argument, even if accepted, is legally irrelevant. An officer's subjective motivation does not invalidate a stop supported by objective probable cause of a traffic violation. *Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Brooks*, 987 F.3d 593, 599 (6th Cir. 2021). Once the vehicle was lawfully stopped,

the odor of marijuana, which was corroborated by Freeman's own admission and the recovery of a marijuana cigarette, supplied probable cause for officers to search the vehicle. *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002). The canine sniff also alerted on the vehicle, and "[a]n alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle." *United States v. Sharp*, 689 F.3d 616, 618 (6th Cir. 2012). When officers searched the vehicle, after the canine alerted, they discovered Freeman's enormous stash of methamphetamine. Any investigation Freeman's counsel would have conducted would not have changed those facts. Freeman has not shown he has a meritorious Fourth Amendment claim as to the search of his vehicle. Without a meritorious Fourth Amendment claim, on which he hinges his entire argument, Freeman fails to show that his plea was either not voluntary or not intelligently made.

**B. Claims concerning the guilty plea**

Freeman next contends that counsel coerced his plea by advising him to "plead guilty or face a certain decade in prison." That advice was accurate. Each count carried a ten-year mandatory minimum. 21 U.S.C. § 841(b)(1)(A). Counsel was obligated to convey it and would have been derelict had he not. Advice that accurately describes a defendant's exposure is not coercion, however unpleasant the reality may be. *Williams v. United States*, 47 F. App'x 363, 370 (6th Cir. 2002) ("[I]nforming the Defendant of the positive and negative effect of pleading guilty is not coercive . . . ."); *see also United States v. Green*, 388 F.3d 918, 923 (6th Cir. 2004) ("[A]ccurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive").

Freeman's remaining allegations that he was pressured by counsel, that he did not understand the factual basis, and that he was told to agree with what was said in court are

contradicted by his own sworn representations at the change-of-plea hearing. The Court engaged in a lengthy Rule 11 colloquy with the Defendant in which the Court inquired in the factual basis contained in Freeman's plea agreement. He advised the Court that he read it, understood it, and that it was, in fact, true. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A defendant is bound by the answers he gives during a Rule 11 colloquy. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). Accordingly, Freeman's declarations at the September 20, 2023, change-of-plea hearing foreclose these claims [Doc. 15].

The evidence against Freeman was overwhelming, including 24.84 pounds of methamphetamine recovered from his own vehicle and video surveillance of an earlier hand-to-hand transaction where he delivered pounds of methamphetamine. Against that, his assertion that he would have insisted on trial is precisely the type of "*post hoc* assertion" that *Lee* holds insufficient. 582 U.S. at 369.

**C. Sentencing claims**

Freeman next faults his counsel for filing no objections to the presentence report and conducting no mitigation investigation. He identifies no objection counsel should have raised and no mitigating evidence counsel should have found or presented. A petitioner alleging a failure to investigate must show what the investigation would have revealed and how it would have changed the outcome. *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005). Freeman's submission offers categories, such as family ties and trauma, without a single fact in support of the categorical assertions. In any event, the Presentence Report contained a detailed information about Freeman's upbringing and the trauma he suffered as a child.

The claim also fails for an independent and dispositive reason. Freeman's 102-month sentence falls below the ten-year mandatory minimum, and the Court reached it on the United States's motion under 18 U.S.C. § 3553(e). When a court departs below a statutory minimum under that provision, it may consider only factors relating to the defendant's substantial assistance. *United States v. Bullard*, 390 F.3d 413, 416 (6th Cir. 2004). General mitigation under § 3553(a) is not a permissible basis for going lower. *Id.* Freeman's speculation that a sentence of 96 or 84 months "was well within the realm of possibility" is therefore mistaken as a matter of law: the mitigation presentation he says counsel should have made could not lawfully have moved the sentence at all. Counsel's omission of a legally unavailable argument prejudiced no one.

**D. No evidentiary hearing is required**

An evidentiary hearing is required unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is needed where allegations are contradicted by the record, inherently incredible, or conclusory. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

Freeman is correct that much of what he alleges concerns off-the-record conversations. But a hearing would serve no purpose here, because his claims fail even if every factual assertion in his declaration is accepted as true. Assuming counsel never mentioned suppression, never investigated, and pressed him toward a plea, the legal consequences are unchanged: there was no meritorious suppression motion to file, and no lawful path to a sentence below 102 months on mitigation grounds.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That requires a demonstration that reasonable jurists could debate whether the motion should have been resolved differently. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Freeman has not made that showing, and a certificate of appealability is **DENIED**. Rule 11(a), Rules Governing Section 2255 Proceedings. The Court further **CERTIFIES** that any appeal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## CONCLUSION

Freeman's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Civil Doc. 1] is **DENIED**. A certificate of appealability is **DENIED**. This action is **DISMISSED WITH PREJUDICE**, and the Clerk is **DIRECTED** to close the civil case.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge